**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Betty Szymanski, individually and as Personal Representative of the estate of Chad Patrick LaRoche, ) ) ) ) Plaintiff, ) ) vs. ) ) Jared A. Davidson, individually, and in his capacity as Williams County Jailer; Scott W. Busching, individually, and in his capacity as Sheriff; Craig Rooks, individually, and in his capacity as supervisor; Williams County Correctional Center; and Williams County, North Dakota, ) ) ) ) ) ) ) ) ) ) ) Defendants. ) | **ORDER** Case No. 4:09-cv-062 |

_____

Before the Court is the Defendants' "Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Loss of Consortium Claim" filed on September 29, 2010. See Docket No. 11. The Plaintiff filed a response in opposition to the motion on November 10, 2010. See Docket No. 16. The Defendants filed a reply brief on November 15, 2010. See Docket No. 18. Also before the Court are the Defendants' "Amended Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Loss of Consortium Claim, or in the Alternative, for Summary Judgment" and "Second Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment" filed on August 25, 2011. See Docket Nos. 34 and 35. The Plaintiff filed a response in opposition to the motions on September 15, 2011. See Docket No. 40. The Defendants filed a reply brief on September 19, 2011. See Docket No. 41.

## I.     BACKGROUND

On March 16, 2006, at approximately 2:45 a.m., Chad LaRoche was arrested and taken to the Williams County Correctional Center ("Correctional Center") in Williams County, North Dakota. Jared A. Davidson was the only jailer on duty at the Correctional Center at that time. During the process of being booked into the Correctional Center, LaRoche indicated to Davidson that he had both prior suicidal acts and current suicidal intentions. LaRoche also expressed concern that he would have to return to Montana to serve a jail sentence.

At the end of the booking process, LaRoche refused to change into a Correctional Center jumpsuit. Davidson then transported LaRoche to an empty four-person cell. Davidson contacted his supervisor, Lieutenant Craig Rooks, to seek permission to move another inmate in order to place LaRoche in a single-person cell with a camera. Davidson received permission from Rooks, then moved LaRoche to the single-person cell and removed his pants. LaRoche requested permission to use a telephone but Davidson did not allow him to do so.

After Davidson left him in the cell, LaRoche attempted to commit suicide by hanging himself with his t-shirt. Davidson returned to LaRoche's cell and removed the t-shirt. Davidson then called the Williston Police Department for assistance in removing the rest of LaRoche's clothing. Davidson and two officers removed the rest of LaRoche's clothing and Davidson left a "suicide smock" in LaRoche's cell, but did not put it on him or ensure that he put it on himself.[1] After Davidson left LaRoche's cell, LaRoche committed suicide by tying one end of the smock around his neck and the other end around the bars of the cell. Davidson discovered LaRoche in his cell,

---

[1] The plaintiff's expert witness, Mary E. West, stated in her findings that the smock given to LaRoche was not a suicide smock but was a gown designed to protect an individual cleaning up hazardous material. According to West, this type of gown does not tear with body weight. See Docket No. 30, p. 3.

called the Williston Police Department to inform them of the situation at approximately 4:15 a.m., and then cut LaRoche down. The paramedics arrived and LaRoche was pronounced dead at 4:52 a.m.

The plaintiff, Betty Szymanski, is Chad LaRoche's mother. She filed a complaint in federal district court on October 9, 2009. See Docket No. 1. In Count I, Szymanski alleges that the Defendants violated LaRoche's civil rights. She contends the Defendants denied LaRoche his rights under the Fifth, Eighth, and Fourteenth Amendments by failing to "provide necessary attention, adequate precautions and preventative measures so as to attempt to prevent LaRoche's suicide to the extent possible." See Docket No. 1. Count II is a wrongful death claim. Szymanski asserts that Davidson had not completed the proper training and failed to follow the North Dakota Correctional Facility Rules regarding training that must be completed within an employee's first year. In Count III, Szymanski alleges Sheriff Scott W. Busching, and Lieutenant Rooks were negligent in allowing Davidson to work alone without receiving the proper training, and that Davidson was negligent "when he failed [to] read, have knowledge of, and understand the Williams County Correctional Policies that governed inmate classification and how to handle inmates classified as suicidal." See Docket No. 1. In Count IV, Szymanski contends she "has suffered, as a result of the Defendants' action and/or inaction, a loss of consortium with her son, LaRoche." See Docket No. 1. The claims are asserted against defendants Davidson, Busching, and Rooks in both their individual and official capacities.

On September 29, 2010, Davidson, Busching, and Rooks filed a "Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Loss of Consortium Claim." See Docket No. 11. Davidson, Busching, and Rooks contend they are immune from suit in their individual capacities as employees

3

and officers of a political subdivision and that a claim for parental loss of consortium of an adult child is not allowed in North Dakota. In her response, Szymanski argues that Davidson, Busching, and Rooks can be held individually liable because their conduct was reckless, grossly negligent, willful, or wanton. She also contends that a claim for parental loss of consortium of an adult child has not been precluded by the North Dakota Supreme Court's case law and should be recognized by this Court.

On August 25, 2011, Davidson, Busching, and Rooks filed an "Amended Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Loss of Consortium Claim, or in the Alternative, for Summary Judgment." See Docket No. 34. The Defendants collectively filed a "Second Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment." See Docket No. 35. The Defendants contend that Szymanski's state law claims are barred by the statute of limitations and that a wrongful death action cannot be brought under 42 U.S.C. § 1983 in North Dakota. In response, Szymanski contends that her state law claims are not time-barred because they are subject to the six-year statute of limitations that applies to 42 U.S.C. § 1983 cases and a wrongful death claim can be brought under 42 U.S.C. § 1983.

## II.  STANDARD OF REVIEW

### A.  MOTION TO DISMISS

The Defendants request that the claims against them be dismissed under Rules 12(c), (d), and (h)(2) of the Federal Rules of Civil Procedure. Rule 12(c) establishes that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and

the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). Rule 12(h)(2) provides that a party can raise the defense that the complaint fails to state a claim upon which relief can be granted in a motion under Rule 12(c). Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The parties have not presented any matters outside the pleadings.[2] Accordingly, the Defendants' motion will be considered under Rule 12(c).

When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006). The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.

---

[2] Szymanski's complaint cites to a "Report of Investigation" as "exhibit 1," but no such document has been filed. Szymanski also filed an expert witness report which refers to an Attorney General investigation report, autopsy report, deposition of Szymanski, responses to interrogatories, and other records. The expert witness report of Mary E. West was filed but none of the other referenced documents have been filed. See Docket No. 30.

5

Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citations and quotations omitted).

Rule 12(b)(6) mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. "[T]he complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (quoting DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002)). "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001).

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the United States Supreme Court clarified the pleading requirements under the Federal Rules of Civil Procedure necessary to survive a motion to dismiss for failure to state a claim. The United States Supreme Court stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

6

Iqbal, 129 S. Ct. at 1949 (internal citations omitted).

### B. SUMMARY JUDGMENT

Defendants Davidson, Busching, and Rooks also filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to the factfinder or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III. LEGAL DISCUSSION

#### A. STATE LAW CLAIMS

Section 28-01-18(4) of the North Dakota Century Code provides that the statute of limitations for "[a]n action for injuries done to the person of another, when death ensues from such injuries, and the claim for relief must be deemed to have accrued at the time of the death of the party injured" is two years. Szymanski asserts in the complaint that Chad LaRoche died on March 16, 2006. See Docket No. 1. The complaint is dated July 31, 2009, and was filed on October 9, 2009. See Docket No. 1. The deadline to bring an action for the wrongful death of Chad LaRoche expired on March 16, 2008 – two years following LaRoche's death. As Plaintiffs did not commence this action until October 9, 2009, the state law claim is time-barred and should be dismissed as a matter of law.

To the extent Szymanski's allegations could be interpreted as alleging a survival cause of action, the limitations period would have been one year from the date of LaRoche's death pursuant to N.D.C.C. § 28-01-26 (personal representative may pursue surviving claims of decedent "after the expiration of [the statute of limitations] and within one year from the person's death"). As a result, any survival claim under North Dakota law would also be time-barred.

As to Szymanski's claim for parental loss of consortium, any loss of consortium claim stemming from the death of an individual is derivative of the underlying wrongful death claim and subject to the two-year statute of limitations period provided by N.D.C.C. § 28-01-18(4). See Weigel v. Lee, 2008 ND 147, 752 N.W.2d 618, 622 (although adult children may not recover loss of consortium damages for personal injury to their parent, they may pursue loss of consortium damages for the death of their parent under the North Dakota wrongful death statute); N.D.C.C. §

8

32-03.2-04(2) (loss of consortium among non-economic damages awardable in a wrongful death action).  Therefore, even if Szymanski has a viable claim for parental loss of consortium damages, the claim only exists under North Dakota's wrongful death statute and the two-year statute of limitations expired before the wrongful death action was commenced.  In summary, all of the state law claim as asserted in Counts II, III, and IV of the complaint are barred by the applicable statute of limitations and dismissed as a matter of law.

### B.       42 U.S.C. § 1983 CLAIM

Szymanski also contends that the Defendants violated LaRoche's constitutional rights when they "with knowledge of LaRoche's suicidal state, and with deliberate indifference to such state, . . . acted, or failed to act, in such a way as to have deprived LaRoche of necessary and adequate protection thus contributing to LaRoche's death."  See Docket No. 1.  42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

#### 1)       STATUTE OF LIMITATIONS

The Defendants concede that North Dakota's six-year statute of limitations for claims involving personal injury applies to all actions brought in the state under 42 U.S.C. § 1983.  In Carpenter v. Williams Cty., N.D., 618 F. Supp. 2d 1293 (D.N.D. 1985), the Court addressed the issue:

In Wilson v. Garcia, 471 U.S. 261 (1985), the Court held that, for statutes of limitations purposes, all section 1983 actions are properly characterized as personal injury actions. The Court further held that 42 U.S.C. § 1988 is fairly construed as a directive to select, in each state, the one most appropriate statute of limitations for all section 1983 claims. Since Wilson arose in New Mexico, the Court applied New Mexico's statute of limitations governing actions "for an injury to the person or reputation of any person." Id. [at 279].

The question can thus be stated simply: What statute of limitations is to be applied to all section 1983 actions to which a North Dakota statute applies? Plaintiff argues the answer lies in N.D. Cent. Code § 32-12.1-10 (Supp. 1983), which provides a three year statute of limitations for actions brought against political subdivisions. In Wilson, however, the Court stated, "We are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials." This court therefore rejects Defendants' assertion that section 32-12.1-10 provides the proper statute of limitations for section 1983 actions in North Dakota.

Defendants argue that Count Two should be governed by the two year statute of limitations for wrongful death actions found in N.D. Cent. Code § 28-01-18(4) (Supp. 1983). In support of their position, they cite cases holding that state law governs survival of civil rights actions under section 1983. Robertson v. Wegmann, 436 U.S. 584 (1978); Archer v. Preisser, 723 F.2d 639 (8th Cir. 1983). The language of Wilson, however, does not leave room to apply a different statute of limitations when a claim for alleged deprivation of civil rights resulting in death is involved:

> Although the need for national uniformity "has not been held to warrant the displacement of state statutes of limitations for civil rights actions," [citations omitted], uniformity within each State is entirely consistent with the borrowing principle contained in § 1988. We conclude that the statute is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.

105 S. Ct. at 1947. For a more balanced approach, see Justice O'Connor's dissent.

North Dakota law provides a six year statute of limitations for "an action for criminal conversation or for any other injury to the person or rights of another not arising upon contract, when not otherwise expressly provided." N.D. Cent. Code § 28-01-16(5) (Supp. 1983). This is the statute for personal injury action which is to be applied in section 1983 actions to which North Dakota law applies. This action was commenced within the six year period.

Carpenter, 618 F. Supp. 2d at 1293-94.

10

The United States Supreme Court explained in Wilson that Congress did not intend for the statute of limitations for civil rights actions to be determined by the various statutes of limitations in state law, "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." Wilson, 471 U.S. at 269. Accordingly, the statute of limitations that applies to Szymanski's civil rights claim under 42 U.S.C. § 1983 is the six-year statute of limitations found in N.D.C.C. § 28-01-16(5). The Court finds that Szymanski's claim under 42 U.S.C. § 1983 is not time-barred.

### 2) WRONGFUL DEATH AS AN ACTION UNDER 42 U.S.C. § 1983

The Defendants argue that a wrongful death action cannot be brought under 42 U.S.C. § 1983 in North Dakota. The Defendants argue that a claim under 42 U.S.C. § 1983 for violation of LaRoche's civil rights must be brought as a survival action, not a wrongful death action. Because Szymanski did not make such a claim under North Dakota law, she is precluded from doing so under 42 U.S.C. § 1983.

Case law in the Eighth Circuit clearly establishes that a wrongful death action can be brought under 42 U.S.C. § 1983. In Andrews v. Neer, 253 F.3d 1052 (8th Cir. 2001), the plaintiff's father had been committed to a state hospital. He died after hospital security aides allegedly used excessive force to restrain him. The plaintiff brought a claim under 42 U.S.C. § 1983 seeking damages on her father's behalf for his injuries and for her own injuries, as well as punitive damages. Andrews, 253 F.3d at 1056. The Eighth Circuit discussed the plaintiff's standing to sue:

> Appellants argue the District Court erred when it held that Andrews has standing to pursue a § 1983 action to recover damages for injuries suffered by her

11

> father. Under § 1983, state actors who infringe the constitutional rights of an individual are liable "to the party injured." 42 U.S.C. § 1983 (1994 & Supp. IV 1998). The appropriate plaintiff is obvious when a party survives his injuries, but the language of § 1983 makes no mention of permissible plaintiffs when the injured party dies. Under 42 U.S.C. § 1988(a) (1994), in this situation we look to state law to determine who is a proper plaintiff, as long as state law is not inconsistent with the Constitution or federal law. See Robertson v. Wegmann, 436 U.S. 584, 588-90 (1978). Generally, state survival statutes govern survival of personal injury actions. Appellants argue that Andrews cannot pursue a § 1983 action in her individual capacity because the Missouri survival statute, Mo. Rev. Stat. § 537.020 (1994), requires that all suits for personal injury be brought by the personal representative of the decedent's estate, and Andrews has not been so appointed. We hold, however, that under Missouri law the Missouri survival statute is inapplicable in the current case. As the District Court correctly determined, the Missouri wrongful death statute applies and provides Andrews standing to pursue a § 1983 action on behalf of Bobby Andrews.

Id. at 1056-57. The Eighth Circuit quoted the Missouri wrongful death statute, which provides that:

> whenever the death of a person results from any act . . . which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who . . . would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for: (1) By the spouse or children or the surviving lineal descendants . . . .

Id. at 1058 (quoting Mo. Rev. Stat. § 537.080) (omissions in original). The Eighth Circuit also concluded that Missouri's wrongful death statute serves the same purposes as 42 U.S.C. § 1983:

> We find no inconsistency in applying this statute to provide standing to Brandy Andrews. Missouri law gives Andrews standing as an individual to assert an action for personal injuries to her father resulting in his death, and we look to this state law. We hold that Andrews has standing to bring this § 1983 action by virtue of Missouri Revised Statute § 537.080.

Id.

North Dakota's wrongful death statute provides:

> Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured, if death had not ensued, to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation,

12

>limited liability company, or company which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or of the tort-feasor, and although the death shall have been caused under such circumstances as amount in law to felony.

N.D.C.C. § 32-21-01. The language of North Dakota's statute is substantially similar to Missouri's. In Andrews, the Plaintiff's father would have been able to sue for damages resulting from the alleged excessive use of force had he survived. Because he passed away, the statute permitted his daughter to sue for his wrongful death. Accordingly, she was allowed to bring a wrongful death claim under 42 U.S.C. § 1983. In this case, LaRoche would have been able to sue for his injuries resulting from the Defendants' conduct had he survived. Szymanski, as the decedent's surviving mother, is permitted to file a wrongful action on his behalf. Accordingly, the Court finds that Szymanski has standing to pursue a wrongful death action under 42 U.S.C. § 1983.

### 3) QUALIFIED IMMUNITY

The Defendants further contend that Szymanski's cause of action under 42 U.S.C. § 1983 should be dismissed because they have qualified immunity. The Eighth Circuit has explained:

>"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). We may first determine whether the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 129 S. Ct. at 818 (holding Saucier's two-step sequence is not mandatory). If so, we next consider whether that right was clearly established at the time of the misconduct. Saucier, 533 U.S. at 201-02.

Coates v. Powell, 639 F.3d 471, 476 (8th Cir. 2011) (alteration in original). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007).

In Prater v. Dahm, 89 F.3d 538 (8th Cir. 1996), an inmate sued prison officials for violation of 42 U.S.C. § 1983 for failing to protect him from being attacked by another inmate. Prater, 89 F.3d at 540. The defendants moved for judgment on the pleadings asserting that they had qualified immunity. Id. The Eighth Circuit stated, "The subjective component of the Eighth Amendment right to protection from inmate attack requires a showing that prison officials acted, or failed to act, with 'deliberate indifference' to inmate health or safety." Id. at 541 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The Eighth Circuit explained further:

> that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." [Farmer, 511 U.S. at 834] In other words . . . "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.
>
> Moreover, even if the prison officials actually know of a substantial risk to inmate health or safety, the officials may nevertheless escape liability "if they respond[] reasonably to the risk, even if the harm ultimately was not averted." Id. at [844]. Therefore, in order to show the state of mind required to establish a constitutional violation, Prater's pleadings must demonstrate that the prison officials failed to act reasonably despite knowledge of a substantial risk of serious harm to Prater. See id.

Id. The Eighth Circuit concluded that the defendants enjoyed qualified immunity because the complaint did not allege any facts from which an inference could be drawn that the defendants were aware of a risk to the plaintiff. Id.

In Turney v. Waterbury, 375 F.3d 756 (8th Cir. 2004), the Eighth Circuit discussed qualified immunity in the context of 42 U.S.C. § 1983 as it relates to jail or prison suicides:

> An official is entitled to summary judgment on the ground of qualified immunity unless the plaintiff establishes that the official's conduct violated the plaintiff's clearly established constitutional rights. Coleman v. Parkman, 349 F.3d 534, 537-38 (8th Cir. 2003). The violation cannot be established merely by the deprivation of a constitutional right; the plaintiff must also show that the official knew such action amounted to a constitutional violation. Yellow Horse v. Pennington

14

> Cnty., S.D., 225 F.3d 923, 927 (8th Cir. 2000). To prove such knowledge in the prisoner-suicide context, the plaintiff must show that the official was deliberately indifferent to a known risk of suicide. Id.; see also Coleman, 349 F.3d at 538 ("The Eighth Amendment prohibits officials from acting with deliberate indifference toward an inmate's substantial suicide risk, and the Fourteenth Amendment extends at least as much protection to pre-trial detainees . . . ." (citation omitted)).

Turney, 375 F.3d at 760.

The Defendants have filed motions to dismiss, motion for judgment on the pleadings, and a motion for summary judgment. See Docket Nos. 11, 34, and 35. The Defendants assert summary judgment is appropriate because "[a]ll questions before this Court involve questions of law. Defendants are entitled to judgment as a matter of law as there are no genuine issues of material fact in dispute." See Docket No. 36. The Court finds that the Defendants have not sufficiently demonstrated the absence of genuine issues of material fact. See Simpson, 425 F.3d at 541 (placing the burden of demonstrating an absence of a genuine issue of material fact on the moving party). From the Court's review of the record before it, there are genuine issues of material fact for the factfinder to resolve at trial. Specifically, genuine issues of material fact exist as to whether the Defendants acted with deliberate indifference toward an inmate's substantial risk of suicide. The parties essentially agree that the decedent (Chad LaRoche) had a clearly established constitutional right to be protected from the risk of suicide. The significant question is whether the defendants knew or were deliberately indifferent to that risk. There is no dispute that once an official knows of such a risk, the Eighth Amendment requires the official to take reasonable measures to abate the risk. See Coleman v. Parkman, 349 F.3d 534 (8th Cir. 2003). The Court will address the issue of whether the moving defendants enjoy qualified immunity from Szymanski's 42 U.S.C. § 1983 claim, accepting all factual allegations in the complaint as true and construing the complaint in favor of Szymanski. Wishnatsky, 433 F.3d at 610.

15

### A.    JAILER JARED A. DAVIDSON

The complaint alleges that Jared Davidson processed LaRoche into the Williams County Correctional Center.  During that process, LaRoche told Davidson that he had committed prior suicidal acts and had current suicidal intentions.  After LaRoche refused to put on the correctional center jumpsuit, Davidson and two other officers placed him in a cell and removed his pants. LaRoche attempted to commit suicide by hanging himself with the t-shirt he was wearing. Davidson and two other officers then removed all of LaRoche's clothing.  Davidson placed a suicide smock in the cell but did not ensure that LaRoche put it on.  LaRoche committed suicide by hanging himself with the suicide smock.

To avoid dismissal of the 42 U.S.C. § 1983 claim against Davidson, Szymanski's complaint must allege that Davidson "failed to act reasonably despite knowledge of a substantial risk of serious harm" to La Roche.  Prater, 89 F.3d at 541 (citing Farmer, 511 U.S. at 844).  The complaint clearly alleges that Davidson was aware of the risk that LaRoche may commit suicide.  LaRoche told Davidson he had previously attempted suicide and had current suicidal intentions.  LaRoche also attempted to commit suicide by hanging himself with his t-shirt before he ultimately hung himself with the suicide smock.  The complaint alleges that Davidson and the other Defendants "displayed a deliberate indifference to the strong likelihood that LaRoche would attempt suicide, thereby contributing to his death."  See Docket No. 1.  The Court finds that the complaint sufficiently states a 42 U.S.C. § 1983 claim against Davidson.

In addition, the record reveals that the plaintiff has retained an expert witness on liability whose findings and opinions support the factual allegations set forth above.  See Docket No. 30. When the factual allegations are construed in a light most favorable to the plaintiff, it is clear there

16

are genuine issues of material fact in dispute which preclude summary judgment. The facts as outlined above, when construed in a light most favorable to the plaintiff, are sufficient to create a genuine issue of material fact as to whether the defendants acted with deliberate indifference to a known risk of suicide. As such, summary judgment is not appropriate as to Jared Davidson and the motion for summary judgment is denied.

### B.   SHERIFF SCOTT W. BUSCHING AND LIEUTENANT CRAIG ROOKS

The complaint alleges that Sheriff Scott Busching and Lieutenant Craig Rooks allowed Davidson "to work independently and without complying with the Williams County Correctional Policy or the North Dakota Correctional Facility Rules." See Docket No. 1. The complaint alleges that "Davidson had not attended corrections school or police basic school" and that he was unfamiliar with the Correctional Center's policies for dealing with suicidal inmates. See Docket No. 1.

The Eighth Circuit has stated that an official "may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." Ambrose v. Young, 474 F.3d 1070, 1079 (8th Cir. 2007) (quoting Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001). However, an official can be held liable for failure to properly train a subordinate if "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the official] can reasonably be said to have been deliberately indifferent to the need." Id. (quoting Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)). It is well-established that a failure to properly train employees is one way in which an entity can exhibit deliberate indifference towards the rights of others. See Yellow Horse v. Pennington Cnty., S.D.,

225 F.3d 923, 928 (8th Cir. 2000). Accepting all of the allegations in the complaint as true and construing the complaint in favor of the plaintiff, Szymanski has alleged sufficient facts to state a 42 U.S.C. § 1983 claim against Busching.

In addition, the complaint alleges that Davidson had not attended the proper training and was unaware of the procedures to be followed when dealing with a suicidal inmate. The plaintiff's expert witness has issued a report and made specific findings which are supportive of the allegations of wrongdoing asserted against Busching and Rooks. See Docket No. 30. The Court finds that the need for jailers to be properly trained to deal with suicidal inmates is obvious, and the inadequacy of such training so likely to result in jail suicides, that Busching and Rooks can arguably be said to have acted with deliberate indifference to LaRoche's needs, particularly when the facts are construed in favor of the plaintiff. The Court is requred to construe the facts in a light most favorable to the plaintiff at this stage. In doing so, there are clearly genuine issues of material fact in dispute concerning the issue of whether there was a failure on the part of county officials to properly train employees to deal with known suicide risks in a correctional facility. This is a factual issue which a jury should resolve at trial rather than the Court. The evidence as outlined above, the facts of which are supported by the plaintiff's expert witness, are sufficient to create genuine issues of material fact as to whether these defendants acted with deliberate indifference under the circumstances. Accordingly, the motions to dismiss the 42 U.S.C. § 1983 claims against Busching and Rooks are denied and summary judgment as to such claims is also denied.

## IV.     CONCLUSION

The Court has carefully reviewed the entire record, the Defendants' motions, the Plaintiff's responses, and the applicable case law. The Court is required to view the facts in a light most favorable to the plaintiff. From that perspective, there are genuine issues of material fact in dispute as to the conduct of the moving defendants and whether such defendants were (1) deliberately indifferent toward an inmate's substantial risk of suicide, and (2) whether the defendants failed to properly train employees in dealing with known suicide risks which failure may evince a disregard for the constitutional rights of an inmate. For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Defendants' "Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Loss of Consortium Claim" (Docket No. 11), "Amended Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Loss of Consortium Claim, or in the Alternative, for Summary Judgment" (Docket No. 34), and "Second Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment" (Docket No. 35). In summary, all state law claims as asserted in Counts II, III, and IV of the complaint are dismissed. However, the motion to dismiss the civil rights claim under 42 U.S.C. § 1983 as asserted in Count I of the complaint is denied. Further, summary judgment as to the civil rights claims asserted against defendants Davidson, Busching, and Rooks in Count I are denied. Summary judgment is not appropriate if there are genuine issues of material fact in dispute. When the evidence presented to date is viewed in a light most favorable to the non-moving party (Szymanski), the Court finds that genuine issues of material

fact remain concerning whether the moving defendants acted with deliberate indifference to the risk of suicide.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court